IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

EARLE W. KELLY, et. al.

Plaintiffs

v.                                    CIVIL NO. 97-2265 (JAG)

LOCKHEED MARTIN SERVICES GROUP,
et. al.

Defendants

---

## REPORT AND RECOMMENDATION

Plaintiff Earle W. Kelly (hereinafter "Kelly") filed an action for employment discrimination and illegal discharge under various federal and state laws against his former employer, defendant Lockheed Martin Service Group (hereinafter "Lockheed"), on August 21, 1997. The only claims currently pending before this Court are Kelly's claim under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 et seq., and § 504 of the Rehabilitation Act, 29 U.S.C. § 794(a).[1]

Defendant filed a Motion for Summary Judgment on August 31, 1999 (Docket No. 72), which plaintiffs opposed (Docket No. 73). Thereafter, defendant filed a reply to plaintiff's opposition (Docket No. 74), and plaintiff, in turn, filed a sur-reply (Docket No. 75). The matter was referred for report and recommendation on August 5, 2001 (Docket No. 96).

## SUMMARY JUDGMENT STANDARD

Rule 56(c), of the Federal Rules of Civil Procedure, sets forth the standard for ruling on summary judgment motions: the judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,

---

[1] Claims under Title I of the ADA and § 504 of the Rehabilitation Act are analyzed under the same standards. See Phelps v. Optima Health, Inc., 251 F.3d 21, 23 (1st Cir.2001)(citing EEOC v. Amego, Inc., 110 F.3d 135, 143 (1st Cir. 1997)).

**CIVIL NO. 97-2265 (JAG)**                              2

show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). The critical question is whether a genuine issue of material fact exists. A genuine issue exists if there is sufficient evidence supporting the claimed factual dispute to require a choice between the parties' differing versions of the truth at trial. Morris v. Government Dev. Bank of Puerto Rico, 27 F.3d 746, 748 (1st Cir. 1994); LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 841 (1st Cir. 1993), cert. denied, 511 U.S. 1018 (1994). A fact is material if it might affect the outcome of the suit under the governing law. Morrisey v. Boston Five Cents Sav. Bank, 54 F.3d 27, 31 (1st Cir. 1995); Maldonando Denis v. Castillo-Rodríguez, 23 F.3d 576, 581 (1st Cir. 1994). On a motion for summary judgment, the court must view all evidence and related inferences in the light most favorable to the nonmoving party. See Springfield Terminal Ry. v. Canadian Pac. Ltd., 133 F.3d 103, 106 (1st Cir. 1997). Nonetheless, the court is free to "ignore 'conclusory allegations, improbable inferences and unsupported speculation.'" Súarez v. Pueblo International, Inc., 229 F.3d 49, 53 (1st Cir. 2000) (citing Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990)).

In order to aid the court in the daunting task of searching for genuine issues of material fact in the record, this district adopted Local Rule 311.12. See, e.g., Corrada Betances v. Sea-Land Service, Inc., 248 F.3d 40, 43-44 (1st Cir. 2001); Morales v. Orssleff's EFTE, 246 F.3d 32, 33-35 (1st Cir. 2001); Ruiz Rivera v. Riley, 209 F.3d 24, 27-28 (1st Cir. 2000). This rule, requires, in relevant part, that a party moving for summary judgment submit, in support of the motion, "a separate, short concise statement of material facts as to which the moving party contends there is no genuine issue to be tried and the basis of such contention as to each material fact, properly supported by specific reference to the record." D.P.R.R. 311.12.

It is clearly established in this District that compliance with Local Rule 311.12 is critical, given that the Court will only consider the facts alleged in the aforementioned 311.12 statements when entertaining the movant's arguments. See Rivera de Torres v. Telefónica de Puerto Rico, 913 F.Supp. 81 (D.P.R. 1995). Defendant Lockheed filed the requisite 311.12 statement with appropriate references to the record. On the other hand, plaintiff Kelly has failed to fully comply

CIVIL NO. 97-2265 (JAG)                                         3

with the requirements of Local Rule 311.12 by filing a lengthy, convoluted and confusing statement replete with conclusory allegations.[2] Plaintiff's noncompliance with the requirements of Rule 311.12 has "caused the Court to waste a considerable amount of time 'ferreting through the record'". See Ruiz v. Caribbean Restaurants, Inc., 54 F.Supp.2d 97, 102 (D.P.R. 1999). See also Dominguez v. Eli Lilly & Co., 958 F.Supp. 721, 727 (D.P.R. 1997)(citing Stepanishen v. Merchants Despatch Transp. Corp., 722 F.2d 922, 930-931 (1st Cir. 1983)).

In view of the aforementioned, the Court will outline the relevant facts of the case in the light most favorable to plaintiff Kelly. However, the Court will not consider the conclusory allegations and assertions in Kelly's defective 311.12 statement.

## FACTUAL BACKGROUND

Defendant Lockheed[3] was a federal contractor for the U.S. Navy engaged in providing support operations to the Atlantic Fleet Weapons Training Facility ("AFWTF")[4] at Roosevelt Roads Naval Station ("Roosevelt Roads"). Lockheed operated an MK 30 Shop which oversaw the preparation, launching, recovery and maintenance of target drones used by the U.S. Navy in target practices. Plaintiff Kelly, who was assigned to the MK 30 Shop in the position of weapon's technician/launch master, was responsible for the preparation, launching and recovery of MK 30

---

[2] As a way of illustrating plaintiff's non-compliance with Rule 311.12, it should be noted that contested fact number three (3) in his 311.12 statement is four (4) pages long. Contested fact number eight (8), in turn, is two (2) pages long. Certainly, this is anything but short and concise.

[3] Plaintiff, in its opposition, has included a full description of defendant Lockheed Martin's enterprise, its broad range of activities, employees and earnings. (See Docket No. 73, Exhibits B, C and D).

[4] On December 1, 1996, pursuant to a bid award granted by the U.S. Navy, ITT Federal Services Corporation ("ITT") assumed the service contract for the operation of the AFWTF project. ITT offered employment only to 15 of the 35 active Lockheed employees assigned to the MK 30 Shop. (See Docket No. 72, Attachment B).

**CIVIL NO. 97-2265 (JAG)** 4

targets.[5] Kelly's tasks also included the loading and unloading of the targets from the support vessels, in order to launch and recover the drones, and provide maintenance to the launchers. (See Docket No. 72, Attachment B, and Mr. Kelly's deposition, Attachments C-F).

There is a discrepancy in the parties' portrayal of plaintiff Kelly's position. Defendant Lockheed characterizes the launch master position as a "physically demanding" job, which requires heavy lifting. In addition, defendant contends that there are no "light duty" positions[6] at the MK 30 Shop, since the launch master position is considered to be a heavy duty assignment, in light of the rigorous nature of the sea borne operations. (See Docket No. 72, Attachment B). On the other hand, plaintiff insists that the launch master position is more technical than physical, and that the "heavy lifting" is done with the aid of some special equipment and not by the launch master. (See Docket No. 73, Exhibits H, pp.46-49). In support of this contention, plaintiff Kelly has presented evidence indicating that while employed at Lockheed he did perform his duties as a launch master in a satisfactory fashion. (See Docket No. 73, Exhibit G, Facundo Troche's deposition).

Defendant contends, and plaintiff does not contest, that plaintiff Kelly took several leaves of absence as a result of various work and non-work related incidents. The dates of said leaves are: 9/18/91 through 11/12/91 (workers' compensation); 3/17/92-6/15/92 (sick leave/short-term disability); 10/11/92-1/25/93 (workers' compensation); 10/3/94-10/24/94 (workers' compensation); 5/23/95-6/19/95 (sick leave/short-term disability); 7/12/95-1/12/96 (workers' compensation); 3/18/96-9/18/96 (workers' compensation). (See Docket No. 72, Attachment A, Exhibit B).

The summary judgment record shows that plaintiff Kelly had a 20 (twenty) pounds lifting restriction and defendants were aware of it. It is further undisputed that Kelly suffered a work related accident on January 19, 1996, when he fell backwards from a crane and re-injured his back

---

[5] MK-30 (drones) are torpedo shaped targets which are twenty feet long, 21 inches in diameter and weigh 2,700 pounds.

[6] Although defendant contends that it did not have a formal "light-duty" policy for employees who suffered non-occupational or work-related injuries, they did consider the feasability of "light duty" assignments, on a case by case basis. (See Docket No. 72, Attachment A).

CIVIL NO. 97-2265 (JAG)                           5

and stressed hernias.[7] On March 18, 1996, Mr. Kelly was placed on a worker's compensation paid leave of absence[8], due to complications related to the January 19th incident. In a letter dated October 9, 1996, and in accordance with defendant's workers' compensation absence policy, Mr. Kelly was dismissed as an active employee due to his inability to return to work since March 18, 1996. (See Docket 72, Attachment A, Exhibit III, letter by Minerva Donato). Additionally, the record shows that Kelly was advised of his right to request long term disability ("LTD") benefits. (See Docket No. 72, letter of October 29, 1996 included in Attachment A).

Defendant asserts that it is the Company's policy to automatically dismiss employees who have been on a continuous six (6) months leave, such as Kelly. This policy, which had been in effect since March 1995 in other Lockheed locations, was made effective to the AFWTF project in early January 1996.[9] Plaintiff Kelly was reminded of the permissible amount of leave under the policy in a letter sent by Minerva Donato, Lockheed's Human Resources Representative, dated July 31, 1996. (See Docket No. 72, Attachments A and J).

As a result of his injuries plaintiff Kelly was deemed to have been wholly disabled and awarded longshore and harbor workers' compensation benefits from March 18, 1996 to April, 1997. (See Docket No. 72, Attachment I). Thus, Mr. Kelly received compensation for 57 weeks (March 18, 1996 through April 21, 1997), at $500.91 per week, for an amount of $28,551.68 (See Docket No. 72, Attachment I). As part of his medical treatment while being on workers' compensation leave, on March 18, 1996, Mr. Kelly underwent a regime of physical therapy. (See Docket No. 72, Attachments E and F). Plaintiff recognized in his deposition that he was unable to resume his work

---

[7] As a matter of exception, plaintiff Kelly was permitted to continue working in "light duty" tasks after the January 1996 accident. (See Docket No. 72, Attachments A, H and D).

[8] During the leave, Mr. Kelly received compensation, in the amount of $500.00 per week, from defendant's insurance carrier, CIGNA, in addition to medical insurance. (See Docket No. 72, Attachments A, C, D, I).

[9] Plaintiff questions the validity of the six-month policy, however, it is undisputed that he was notified of the policy at the very latest on July 31, 1996, almost three months prior to the termination of his six-month period.

CIVIL NO. 97-2265 (JAG)                              6

duties at Lockheed until the completion of the aforementioned physical therapy. (Docket No. 72, Attachment E). Nonetheless, plaintiff Kelly alleges that shortly before the expiration of his workers' compensation leave in October 1996, he orally requested defendant Lockheed to provide him with an extension of said leave.

## ADA

"To obtain relief under the ADA, a plaintiff must demonstrate that: (1) he was disabled within the meaning of the Act; (2) he was a qualified individual, i.e. able to perform the essential functions of the position with or without reasonable accommodations; and (3) he was discharged because of his disability." See Kvorjak v. Maine, 259 F.3d 48, 54 (1st Cir. 2001)(citing Ward v. Mass Health Research Inst., Inc., 209 F.3d 29, 33 (1st Cir. 2000)). For purposes of its summary judgment motion, defendant Lockheed concedes that plaintiff Kelly meets the statutory definition of disability. (See Docket No. 72, Memorandum, p. 4). See, e.g., Gelabert-Ladenheim v. American Airlines, Inc., 252 F.3d 54 (1st Cir. 2001)(discussing whether an employee is "disabled" within the meaning of the ADA). In this case, the dispute centers on the second inquiry, wether Kelly was a *qualified individual* under the ADA. In particular, wether plaintiff Kelly could perform the essential functions of his position if given reasonable accommodations by defendant Lockheed.

Title I of the ADA provides that a covered employer must make reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability' as long as that disability persists, unless and until those accommodations impose and undue hardship on the employer. 42 U.S.C. § 12112(b)(5)(A). Such accommodations can take various forms, and the duty to accommodate is an ongoing responsibility that is not exhausted by a single effort on the employer's part Navarro v. Pfizer Corp., 261 F.3d 90, 101 (1st Cir. 2001)(citing Garcia-Ayala v. Lederle Parenterals, Inc., 212 F.3d 638, 648 n.12 (1st Cir. 2000)). Plaintiff Kelly has the burden of showing that he is a *qualified individual* under the Act. See, e.g., Garcia-Ayala v. Lederle Parenterals, Inc., 212 F.3d at 646. See also Criado v. IBM Corp., 145 F.3d 437, 443 (1st Cir. 1998). The analysis of wether an individual is qualified or not involves a two-prong inquiry: "first, whether

CIVIL NO. 97-2265 (JAG)                               7

the individual can perform the essential functions of [his] position; and second, if [he] is unable to perform those essential functions, whether any reasonable accommodation by [his] employer would allow [him] to do so." Phelps v. Optima Health, Inc., 251 F.3d 21, 25 (1st Cir. 2001). See also Soto-Ocasio v. Federal Express Corp., 150 F.3d 14, 18 (1st Cir. 1998).

I. **Essential Functions:**

An "essential function" is a fundamental job duty of the position at issue. Kvorjak v. Maine, 259 F.3d at 55 (citing Ward, 209 F.3d at 34; 29 C.F.R. § 1630.2(n)(1)). In this case, both plaintiff Kelly and defendant Lockheed have presented a great deal of evidence in support of their conflicting versions of Kelly's essential functions as a launch master, i.e., what exactly were Kelly's duties and wether or not he could perform them. In addition, the record shows that during Kelly's long history of employment with defendant, he was unable in several occasions to fulfill his duties due to his disability and was placed by Lockheed on "light duty". In instances where an employer and an employee have made arrangements to account for the employee's disability, a court must evaluate the essential functions of the job without considering the effect of the special arrangements. Phelps v. Optima Health, Inc., 251 F.3d at 25 (citing Batish v. Cook County, 241 F.3d 919, 930 (7th Cir. 2001)). In other words, "evidence that accommodations were made so that an employee could avoid a particular task 'merely shows the job could be restructured, not that [the function] was non-essential'. . . .To do otherwise would unacceptably punish employers from doing more than the ADA requires, and might discourage such an undertaking on the part of the employers." Phelps v. Optima Health, Inc., 251 F.3d at 26. (citations omitted).

There seems to be no question that during the course of his employment relationship with defendant, Kelly could not only perform his job as a launch master but also that he was good at it. Nonetheless, Kelly misconstrues his burden of proof under the ADA: "[i]t is plaintiff's burden to prove that at the time [he] thought to resume [his] job, [he] had the ability to perform the essential functions" of his job. See Soto-Ocasio v. Federal Express Corp., 150 F.3d at 18. This he has failed to do. Kelly has not set forth evidence suggesting that at the time he was terminated, October 1996,

CIVIL NO. 97-2265 (JAG)                    8

he was able to perform the essential functions of his job with or without reasonable accommodations. In fact, Kelly himself stated in his deposition that he was unable to resume his work duties while he was on physical therapy, and that he was in fact on therapy at the time that he was terminated by defendant. (See Docket No. 72, Kelly's deposition, Attachment E, pp. 17-18, 98-99).

Furthermore, at the time of Kelly's dismissal, he was receiving longshore and harbor workers' compensation benefits as a result of his injuries and had been deemed to be wholly disabled and thus precluded from performing any type of work from March 18, 1996 through April 21, 1997. (See Docket No. 72, Attachment I). The First Circuit has stated that "if an ADA plaintiff was receiving, during the time [he] claims to have been denied reasonable accommodation, total disability benefits that were predicated on [his] *inability* to perform the job, then, to defeat a motion for summary judgment, [he] must make some type of showing that [he] was in fact *able* to perform the essential functions of [his] job during the time in question." See Soto-Ocasio v. Federal Express Corp., 150 F.3d at 19-20. Because Kelly failed to make an. affirmative showing of his ability to perform the essential functions of his position at the relevant point in time, there is no genuine issue of material fact as to whether he is a 'qualified individual' under the ADA.

## II. Reasonable Accommodations:

Even though the record shows that Kelly was unable to perform the essential functions of his position at the time of his termination, this Court will nonetheless discuss the issue of "reasonable accommodations," given that plaintiff has alleged that he made numerous requests to defendant Lockheed to provide him with "reasonable accommodations".[10] The ADA's "reasonable

---

[10] "In order to prove 'reasonable accommodation,' a plaintiff needs to show not only that the proposed accommodation would enable [him] to perform the essential functions of [his job], but also that, at least on the face of things, it is feasible for the employer under the circumstances. ... If plaintiff succeeds in carrying this burden, the defendant then has the opportunity to show that the proposed accommodation is not feasible as it appears but rather that there are further costs to be considered, certain devils in the details." Reed v. Lepage Bakeries, Inc., 244 F.3d, 254, 259 (1st Cir.

CIVIL NO. 97-2265 (JAG)                              9

accommodation requirement usually does not apply unless 'triggered by a request' from the employee. . .The employee's request must be 'sufficiently direct and specific.'" Reed v. Lepage Bakeries, Inc., 244 F.3d, at 260-61 (citations omitted).

As previously mentioned, plaintiff Kelly makes numerous references to different instances during his long employment relationship with Lockheed in which he allegedly asked for "reasonable accommodations."[11] However, the only "reasonable accommodation" that is relevant to the present inquiry is the one that Kelly allegedly made at the time of his termination in October of 1996, after being on leave for over six (6) months. The record shows that Kelly made a verbal request for an extension of his medical leave, and that he did not provide a definite date for his return, but rather said that he would return to work when his doctors would allow him to do so.

True enough, "[s]ome employees, by the nature of their disability, are unable to provide an absolutely assured time for their return to employment, [and] that does not necessarily make a request for leave to a particular date indefinite." See Garcia-Ayala v. Lederle Parenterals, Inc., 212 F.3d at 648. By characterizing his request for an extended leave in a similar fashion to that of the plaintiff in Garcia-Ayala, plaintiff Kelly invites this Court to conclude that "while the burden of showing reasonable accommodation is on [him], this is a case in which the employer did not contest the reasonableness of the accommodation except to embrace a *per se* rule that any leave beyond its [six-month] period was too long." See Garcia-Ayala v. Lederle Parenterals, Inc., 212 F.3d 648-49. However, unlike the plaintiff in Garcia-Ayala, Kelly did not provide Lockheed with a specific date of return when he requested the additional leave. Therefore, by giving defendant Lockheed no indication as to when he might be able to return to work, plaintiff Kelly was in essence demanding that his job be held open indefinitely.

---

2001).

[11]   The record shows that plaintiff Kelly appears to have made different requests for "accommodations" during the time of his employment with Lockheed. (See e.g., Docket No. 73, Exhibit J, pp. 142-47; Exhibit H, pp. 53-57; Exhibit I, pp 193-203; Exhibit J, pp. 9-18, 25-25, 39-46, 132-135). However, not only were these requests extremely vague, but more importantly they are not relevant to whether or not Kelly was in fact a *qualified individual*, by being able to perform his job with a reasonable accommodation **at the time of his discharge.**

CIVIL NO. 97-2265 (JAG)                              10

## CONCLUSION

Because plaintiff Kelly has not presented sufficient evidence to meet his burden of showing that he could perform the essential functions of his position, with or without reasonable accommodations, the Court hereby **RECOMMENDS** that defendant's summary judgment motion (Docket No. 72) be **GRANTED** and plaintiff's complaint be **DISMISSED** in its entirety.

Under the provisions of Rule 510.2, Local Rules, District of Puerto Rico, any party who objects to this report and recommendation must file a written objection thereto with the Clerk of the Court within ten (10) days of the party's receipt of this report and recommendation. The written objections must specifically identify the portion of the recommendation, or report to which objection is made and the basis for such objections. Failure to comply with this rule precludes further appellate review. See Thomas v. Arn, 474 U.S. 140, 155 (1985), reh'g denied, 474 U.S. 1111 (1986); Davet v. Maccorone, 973 F.2d 22, 30-31 (1st Cir. 1992); Paterson-Leitch v. Massachusetts Elec., 840 F.2d 985 (1st Cir. 1988); Borden v. Secretary of Health and Human Servs., 836 F.2d 4, 6 (1st Cir. 1987); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); Park Motor Mart, Inc. Ford Motor Co., 616 F.2d 603 (1st Cir. 1980).

At San Juan, Puerto Rico, this 24th day of October, 2001.

GUSTAVO A. GELPI
United States Magistrate-Judge