IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

EARLE W. KELLY, et. al.

    Plaintiffs                CIVIL NO. 97-2265 (JAG)

    v.

LOCKHEED MARTIN SERVICES
GROUP, INC., et al.

    Defendants

**OPINION AND ORDER**

Plaintiffs brought suit against defendant Lockheed Martin Services Group, Inc. ("Lockheed") pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et. seq.. Lockheed has moved for summary judgment, contending that plaintiffs cannot prevail as a matter of law. The Court referred the motion for summary judgment to United States Magistrate Judge Gustavo Gelpí for a Report and Recommendation. Pending before the Court are plaintiffs' objections to the Magistrate Judge's Report and Recommendation. (Docket No. 102). The Magistrate Judge recommended that the Court **GRANT** summary judgment. After reviewing plaintiffs' objections, the Court **ADOPTS** in part the Report and Recommendation. (Docket No. 100).

**STANDARD OF REVIEW**

A district court may, on its own motion, refer a pending matter to a United States Magistrate Judge for a Report and



AO 72A
(Rev. 8/82)

Civil No. 97-2265(JAG)                                                    2

Recommendation. 28 U.S.C. § 636(b)(1)(B); Fed.R.Civ.P. 72(b); Local Rule 503. The losing party may contest the Report and Recommendation by filing written objections within ten days of being served with a copy of the Report and Recommendation. The Court must then make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. The Court may accept, reject or modify, in whole or in part, the Magistrate Judge's recommendations. "Failure to raise objections to the Report and Recommendation waives that party's right to review in the district court and those claims not preserved by such objection are waived on appeal." Davet v. Maccarone, 973 F.2d 22, 30-31 (1st Cir.1992).

### FACTUAL BACKGROUND[1]

Defendant Lockheed was a federal contractor for the U.S. Navy engaged in providing support operations to the Atlantic Fleet Weapons Training Facility ("AFWTF")[2] at Roosevelt Roads Naval Station ("Roosevelt Roads"). Lockheed operated an MK 30 Shop which oversaw the preparation, launching, recovery and maintenance of target drones used by the U.S. Navy in target practices. Kelly,

---

[1] The factual background is taken from the Magistrate Judge's Report and Recommendation.

[2] On December 1, 1996, pursuant to a bid award granted by the U.S. Navy, ITT Federal Services Corporation ("ITT") assumed the service contract for the operation of the AFWTF project. ITT offered employment only to 15 of the 35 active Lockheed employees assigned to the MK 30 Shop. (See Docket No. 72, Attachment B).

Civil No. 97-2265(JAG)                                                          3

who was assigned to the MX 30 Shop in the position of weapon's technician/launch master, was responsible for the preparation, launching and recovery of MK 30 targets.³ Kelly's tasks also included the loading and unloading of the targets from the support vessels, in order to launch and recover the drones, and provide maintenance to the launchers. (See Docket No. 72, Attachment B, and Mr. Kelly's deposition, Attachments C-F).

Lockheed contends, and plaintiffs do not contest, that Kelly took several leaves of absence as a result of various work and non-work related incidents. The dates of said leaves are: 9/18/91 through 11/12/91 (workers' compensation); 3/17/92-6/15/92 (sick leave/short-term disability); 10/11/92-1/25/93 (workers'compensation); 10/3/94-10/24/94 (workers' compensation); 5/23/95-6/19/95 (sick leave/short-term disability); 7/12/95-1/12/96 (workers'compensation); 3/18/96-9/18/96 (workers' compensation). (See Docket No. 72, Attachment A, Exhibit B). It is further undisputed that Kelly suffered a work related accident on January 19, 1996, when he fell backwards from a crane and re-injured his back and stressed hernias.⁴ On March 18, 1996, Kelly was placed on

---

    ³    MK-30 (drones) are torpedo shaped targets which are twenty feet long, 21 inches in diameter and weigh 2,700 pounds.

    ⁴    As a matter of exception, plaintiff Kelly was permitted to continue working in "light duty" tasks after the January 1996 accident. (See Docket No. 72, Attachments A, H and D).

Civil No. 97-2265(JAG)                                                    4

a worker's compensation paid leave of absence[5], due to complications related to the January 19th incident. In a letter dated October 9, 1996, and in accordance with Lockheed's workers' compensation absence policy[6], Kelly was dismissed as an active employee due to his inability to return to work since March 18, 1996. (See Docket 72, Attachment A, Exhibit III, letter by Minerva Donato). Additionally, the record shows that Kelly was advised of his right to request long term disability ("LTD") benefits. (See Docket No. 72, letter of October 29, 1996 included in Attachment A). Shortly before the expiration of his workers' compensation leave in October 1996, Kelly orally requested Lockheed to provide him with an indefinite extension of said leave.

## DISCUSSION

The Magistrate Judge considered plaintiffs' principal claim-that Kelly, at the time of his dismissal, could have performed the essential functions of the launch master position if Lockheed had

---

[5] During the leave, Mr. Kelly received compensation, in the amount of $500.00 per week, from defendant's insurance carrier, CIGNA, in addition to medical insurance. (See Docket No. 72, Attachments A, C, D, I).

[6] Lockheed asserts that it is the Company's policy to automatically dismiss employees who have been on a continuous six (6) months leave, such as Kelly. This policy, which had been in effect since March 1995 in other Lockheed locations, was made effective to the AFWTF project in early January 1996. It is undisputed that Kelly was advised about the permissible amount of leave under the policy in a letter sent by Minerva Donato, Lockheed's Human Resources Representative, dated July 31, 1996. See Docket No. 72, Attachments A and J).

Civil No. 97-2265(JAG) 5

given him a reasonable accommodation- and noted that Kelly admitted during his deposition that he was unable to resume his work before April of 1997. A Longshoreman & Harbor Worker's Compensation Act ("LHWCA") arbitrator had already classified Kelly as being wholly disabled through April of 1997. (R & R at page 8). The Magistrate Judge reasoned that at the time of Kelly's dismissal, Kelly was receiving LHWCA benefits as a result of his injuries and had been deemed to be wholly disabled and thus precluded from performing any type of work from March 18, 1996 through April 21, 1997. (See Docket No. 72, Attachment I). The Magistrate Judge then cited long-standing First Circuit precedent and determined that "if an ADA plaintiff was receiving, during the time [he] claims to have been denied reasonable accommodation, total disability benefits that were predicated on [his] inability to perform the job, then, to defeat a motion for summary judgment, [he] must make some type of showing that [he] was in fact able to perform the essential functions of [his] job during the time in question." See Soto-Ocasio v. Federal Express Corp., 150 F.3d 15, 19-20 (1st Cir 1998). (R & R at page 8). The Magistrate Judge concluded that "[b]ecause Kelly failed to make an affirmative showing of his ability to perform the essential functions of his position at the relevant point in time, there is no genuine issue of material fact as to whether he is a 'qualified individual' under the Act." Id.

Civil No. 97-2265(JAG)                                                    6

Even though the Magistrate Judge concluded that Kelly was not a "qualified individual" under the ADA, the Magistrate Judge decided to address the issue of reasonable accommodation. We concur, however, with the Magistrate Judge's conclusion that Kelly was not a "qualified individual" under the Act, and the Court need not address the issue of reasonable accommodation.[7] The Court will, therefore, only address plaintiffs' objections to the Magistrate Judge's conclusion that Kelly was not a qualified individual under the ADA.

Plaintiffs filed their objections to the Magistrate Judge's Report and Recommendation on November 5, 2001. (Docket No. 101). In their objections, plaintiffs claim that the Magistrate Judge erred in concluding that Kelly was not a "qualified individual" under the ADA, because there was a genuine issue of material fact as to what were the essential functions of the launch master position. (Objection to R&R at 5). Lockheed characterized the

---

[7] Plaintiffs averred that Lockheed did not contest the reasonableness of the accommodation that Kelly requested, except that Lockheed embraced its per se rule that any leave beyond six consecutive months was too long, and provided no evidence of undue hardship. Garcia-Ayala, 212 F.3d 632, 648 (1st Cir. 2000). Objections to R & R at p. 9. Plaintiffs argue that given Lockheed's failure to present the court with evidence of any undue hardship, and given the First Circuit ruling in Garcia-Ayala, the Magistrate Judge was compelled to hold that Kelly's requested accommodation was reasonable. Even if Kelly's requested accommodation were to be deemed reasonable, he would still not have been able to perform the essential functions of the position at the time in question.

Civil No. 97-2265(JAG)                                                    7

launch master position as a "physically demanding" job, which requires heavy lifting. In addition, Lockheed contended that there were no "light duty" positions[8] at the MK 30 Shop, since the launch master position was considered to be a heavy duty assignment, in light of the rigorous nature of the sea borne operations. (Docket No. 72, Attachment B). On the other hand, plaintiffs insist that the launch master position is more technical than physical, and that the "heavy lifting" is done with the aid of some special equipment and not by the launch master. (Docket No. 73, Exhibits H, pp.46-49). In support of this contention, plaintiffs presented evidence indicating that Kelly performed his duties as a launch master in a satisfactory fashion during his tenure at Lockheed. (See Docket No. 73, Exhibit G, Facundo Troche's deposition).

After carefully reviewing the entire record the Court finds plaintiffs' objection to be unwarranted. Despite plaintiffs' allegation that Kelly's job did not entail heavy physical requirements, Kelly's neurological expert witness, Dr. Glenn Garayalde, concluded that the "launch master" position was very physically demanding. (Paragraph 6 of Lockheed' Statement of Uncontested Facts). Furthermore, on July 19, 1996, Kelly was

---

[8] Although Lockheed argues that it did not have a formal "light-duty" policy for employees who suffered non-occupational or work-related injuries, Lockheed did consider the feasability of "light duty" assignments, on a case by case basis. ( Docket No. 72, Attachment A).

Civil No. 97-2265(JAG)                                                         8

examined by Dr. Charles A. Payne, who prepared a report concluding that Kelly was totally disabled to carry on his duties at Lockheed and recommended that he should extend his education towards more intellectual and sedentary pursuits, rather than manual jobs. (Paragraph 19 of Lockheed's Statement of Uncontested Facts.) Moreover, during the two years preceding his termination, Kelly was injured on the job three different times, and he received workers compensation benefits for over 15 months in that span[9].

As a result of these injuries Kelly was deemed to have been wholly disabled and awarded long shore and harbor workers' compensation benefits from March 18, 1996 to April 21, 1997. (See Docket No. 72, Attachment I). As part of his medical treatment while being on workers' compensation leave, on March 18, 1996, Kelly underwent a regime of physical therapy. (See Docket No. 72, Attachments E and F). Kelly recognized in his deposition that he was unable to resume his work duties at Lockheed until the completion of the aforementioned physical therapy. (Docket No. 72, Attachment E). Kelly also admitted that once he commenced his worker's compensation leave of absence in March 1996, he was not released from medical care or allowed to return to work with

---

[9] From July 12, 1995 to January 12, 1996 he was on Workers' Compensation leave; and from January 12 to March 17, 1996 he was permitted, as a matter of exception, to work on a light duty status. Finally, from March 18, 1996 until the notice of his termination, on October 9, 1996, he was on a Workers' Compensation leave.

Civil No. 97-2265(JAG)                                                    9

Lockheed until April 21, 1997. (Paragraph 23 of Lockheed's Statement of Uncontested Facts.)

Accordingly, the evidence in the record clearly shows that Kelly could not return to work for Lockheed even under a "light duty" accommodation because, at the time of his discharge and termination, he was wholly disabled to work. Thus plaintiffs have failed to make an affirmative showing that Kelly was in fact able to perform the essential functions of his job with or without reasonable accommodation during the time in question. See Soto-Ocasio v. Federal Express Corp., 150 F.3d at 19-20; Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, (1999).

## CONCLUSION

For the foregoing reasons, the Court **ADOPTS** Magistrate Judge Gelpí's Report and Recommendation as to its conclusion that Kelly was not a qualified individual under the ADA. Judgment shall be entered dismissing the Complaint with prejudice.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 17th day of April 2002.

_____
JAY A. GARCIA-GREGORY
United States District Judge